Olaf REISHUS, d/b/a Reishus Construction
Co., Plaintiff, Respondent and
Cross-Appellant,

v.

IMPLEMENT DEALERS MUTUAL INSUR-
ANCE CO., a corporation, De-
fendant and Appellant,

and

Paul Boyle and City of Mohall, a munici-
pal corporation, Defendants and
Cross-Respondents.

No. 8004.

Supreme Court of North Dakota.

Dec. 10, 1962.

Rehearing Denied Dec. 27, 1962.

Day, Stokes, Vaaler & Gillig, Grand Forks, for defendant and appellant Implement Dealers Mutual Insurance Co.

Ilvedson, Pringle, Herigstad & Meschke, Minot, for plaintiff, respondent and cross-appellant.

Palda, Palda, Peterson & Anderson, Minot, for defendant and cross-respondent Paul Boyle.

Bosard, McCutcheon & Coyne, Minot, for defendant and cross-respondent City of Mohall.

TEIGEN, Judge.

Plaintiff, Olaf Reishus, a contractor, and the defendant City of Mohall, a municipal corporation, entered into a contract whereby the plaintiff agreed to remodel a municipally owned building. While the work was in progress, the building was destroyed by fire. Thereafter, plaintiff sued the defendant City of Mohall and the defendant Implement Dealers Mutual Insurance Company, as plaintiff's insurer, in the alternative for the work performed remaining unpaid. In the same action it also sued the defendant Implement Dealers Mutual Insurance Company, as plaintiff's insurer, for plaintiff's loss of equipment, tools and machinery destroyed by the fire. As a second alternative, plaintiff sued the defendant Paul Boyle, agent of the defendant Implement Dealers Mutual Insurance Company, for negligence on both losses.

The action was tried to the court without a jury. Judgment was entered in favor of the plaintiff against the defendant Implement Dealers Mutual Insurance Company, and for a dismissal of plaintiff's complaint against the City of Mohall and Paul Boyle.

The defendant Implement Dealers Mutual Insurance Company appealed from the judgment against it demanding a trial de novo. The plaintiff, Olaf Reishus, cross-appealed from the judgment dismissing his complaint against the City of Mohall and Paul Boyle demanding a trial de novo.

In his complaint the plaintiff alleged that in November of 1957, he and the defendant City entered into a contract whereby the plaintiff agreed to furnish labor and materials for remodeling an existing community hall into a fire hall for the agreed sum of $15,037.50; that in December of 1957, plaintiff applied to the defendant Paul Boyle, an agent of the defendant Implement Dealers Mutual Insurance Company, for builder's risk, fire and extended coverage insurance covering the work, materials, tools and equipment which was accepted and bound by the said Paul Boyle; that the said Paul Boyle transmitted an application for the insurance to his principal, the defendant Implement Dealers Mutual Insurance Company, forthwith and that no policy was delivered to the plaintiff. The plaintiff undertook the remodeling work but on March 3, 1958, before it was completed, the building and the materials, tools and equipment at the site were totally destroyed by fire. Plaintiff alleges the work completed and materials furnished when the fire occurred were valued at $9,809.00 of which the defendant City of Mohall had paid to the plaintiff the sum of $4,623.75, leaving a balance due of $5,185.25. The machinery, tools and equipment destroyed on the premises were valued at $7,759.93 and plaintiff alleges that if the defendant Paul Boyle did not bind or procure the insurance applied for, he negligently failed to do so to the plaintiff's loss in both of the aforementioned amounts, to wit, $12,945.18.

The defendant Paul Boyle answering admits the allegations of the complaint, except he denies being negligent, and places the plaintiff on his proof as to the amount of the loss.

The defendant insurance company answering generally denies the allegations of the complaint and specifically denies that its agent, Paul Boyle, transmitted an application for the insurance in December of 1957 and alleges that at no time, prior to the loss, was any contract for insurance made or any application therefor submitted to it by any person. As a second defense, it alleges the contract between the plaintiff and defendant City of Mohall provides that fire insurance was to be carried by the defendant City of Mohall with the plaintiff designated as coinsured.

The defendant City of Mohall answered and counterclaimed. It admits the building contract, the commencement of the work and the total destruction of the building by fire. It does not deny or admit other matters pleaded in the complaint and places the plaintiff on his proof. It denies any balance due the plaintiff and sets up three counterclaims. The first one in tort alleging the plaintiff or his agent negligently set fire to the building. This was dismissed on stipulation during the trial. Second, in breach of contract alleging parol modification of the builder's contract to provide that plaintiff would furnish builder's risk insurance which he failed to do. Third, that plaintiff made the application for insurance alleged in the complaint at the special instance and request of the City and for its benefit. It also prays that it be subrogated to the rights of the plaintiff against the defendant insurance company and asks judgment against the defendant Boyle.

The trial court found on application of the plaintiff that on December 16, 1957, the defendant Paul Boyle, a duly authorized agent of the defendant Implement Dealers Mutual Insurance Company, insured the building, improvements and equipment by an insurance binder, against loss or damage by fire in the amount of $17,942.00 on behalf of his principal, defendant Implement Dealers Mutual Insurance Company; that the plaintiff relied on Boyle's promise to insure and therefore he did not procure insurance elsewhere; that the insurance binder became effective December 16, 1957, and was still in effect on March 3, 1958, the date of the fire. The trial court therefore ordered judgment against the defendant Implement Dealers Mutual Insurance Company.

The trial court also found the written contract between the plaintiff and the defendant City of Mohall had not been modified by parol and it dismissed the claim of the defendant City of Mohall that it was a coinsured. The court found that the plaintiff was entitled to no relief against the defendant Paul Boyle or the defendant City of Mohall.

The Implement Dealers Mutual Insurance Company appealed. In its appeal it named and served only the plaintiff as respondent. The plaintiff then appealed, naming and serving the remaining defendants as respondents. Trial de novo is demanded in both appeals.

The plaintiff's prayer for relief set forth in his complaint is in the alternative and he argues he has taken the cross-appeal to preserve his claim in the alternative, in the event the appeal taken by the defendant Implement Dealers Mutual Insurance Company should be decided in its favor.

We will first consider the appeal of the defendant Implement Dealers Mutual Insurance Company which will determine whether or not we must then consider plaintiff's cross-appeal. If the judgment is affirmed, the issues raised by the cross-appeal are moot.

The appellant, defendant Implement Dealers Mutual Insurance Company, a corporation, will hereafter be referred to as defendant insurance company for the sake of convenience. In its specifications of error, it merely specifies that the findings of the court against it are in error. In its

brief and argument to this court, it has argued four points, as follows: (1) Insufficiency of the evidence to sustain the judgment; (2) Assuming the contract of insurance came into effect on December 16, 1957, that the expiration of more than 60 days without payment of the premium in cash or by an unconditional note voided the insurance; (3) The plaintiff has no insurable interest; and (4) If the insurance was effected by an oral binder supported by the application, there was no compliance with the coinsurance clause which was made a requisite to coverage of the equipment, tools and machinery.

The specifications made a part of the contract between the plaintiff and the City of Mohall provided the City shall effect and maintain fire insurance upon the entire structure to 100% of the insurable value thereof, including items of labor and materials connected therewith, surplus materials, shanties, protective fences, temporary structures, miscellaneous materials and supplies incident to the work, and such scaffoldings, stagings, towers, forms and equipment as are not owned or rented by the contractor, the cost of which is to be included in the cost of the work. It also provided that if the City failed to effect or maintain such insurance and so notifies the contractor, he may insure his own interest and that of his subcontractors and charge the cost thereof to the City. The City carried insurance with the State Fire and Tornado Fund in the amount of $15,000.00. The evidence indicates the building at the time of the loss with the improvements partially in place were valued from $20,000.00 to $30,000.00.

Prior to the time the contract was executed, the plaintiff had contacted the defendant Paul Boyle, who was in the insurance and real estate business in Mohall. He advised Boyle he would be needing a performance bond and insurance if he got the contract. After the contract was secured, plaintiff again contacted the defendant Paul Boyle and informed him that he needed a performance bond and insurance, including builder's risk and liability insurance. Defendant Paul Boyle made application for the performance bond to the Western Surety Company, which company declined the application in November of 1957. At the suggestion of Paul Boyle, the plaintiff then contacted one Charles Johnson at Minot, North Dakota, who is also engaged in the insurance and real estate business. Johnson informed the plaintiff that his bonding company would require that plaintiff carry liability and physical damage insurance consisting of insurance coverage for fire, builder's risk and extended coverage. Plaintiff informed Johnson that he had made arrangements with the defendant Paul Boyle to secure the necessary insurance. Johnson agreed to this arrangement and prepared and handed to the plaintiff a slip of paper upon which he noted the types of insurance which plaintiff was required to secure to take to Mr. Boyle. The plaintiff exhibited the slip of paper to the defendant Mr. Boyle and Boyle assured him that he would secure the necessary insurance coverage for him. Mr. Johnson secured the performance bond for the plaintiff and was orally assured by Mr. Boyle that the necessary insurance had been secured. The performance bond became effective December 30, 1957. The defendant Paul Boyle at various times assured the plaintiff, Johnson, some members of the Mohall City Council and the City Attorney that builder's risk, fire and extended coverage insurance, and liability insurance were taken care of. These conversations took place prior to the issuance of the performance bond.

The defendant Paul Boyle testified at the trial of the case that he prepared and forwarded to the defendant insurance company an application for the specified builder's risk insurance on December 16, 1957. He also testified that in the application the plaintiff was named as the insured, the amount of coverage was designated as $17,942.00, the effective date was given as December 16, 1957, and the term was one year.

The remodeling work commenced January 10, 1958, and thereafter the defendant Boyle again assured the plaintiff, as well as other parties, that the requested insurance coverages were in effect and everything was taken care of.

Fire destroyed the building, including the work and materials thereon, on the early morning of March 3, 1958. It also destroyed plaintiff's equipment, tools and machinery located at the site and some equipment and tools of a subcontractor, none of which were covered by other insurance.

The defendant Boyle was the agent for three fire insurance companies, one of which was the defendant insurance company. By virtue of the agency agreement between the defendant insurance company and Mr. Boyle, he had authority to issue insurance binders. It appears that at no time prior to the occurrence of the fire did Boyle disclose to this plaintiff which insurance company he had selected to write the risk. It does not appear that the plaintiff made any inquiry relative thereto. Plaintiff Boyle testified that he had selected the defendant insurance company in which to write the risk and that he had forwarded the application for such insurance to the defendant insurance company but had not received the policy. He positively testified that on December 16, 1957, he forwarded to the defendant insurance company the application by mail; that a copy of the application was placed in his suspense file; that on February 28, 1958, it came to his attention that the policy had not been received and that on March 1, 1958, he wrote the defendant insurance company a letter, which is in evidence, relative to the application in question. He also inquired about another application for insurance for another applicant on which he had not received the policy. March 1, 1958, was a Saturday and he testified he posted the letter at the post office mail drop at Mohall that afternoon. The post office was closed on Saturday afternoons, as well as all day Sunday. The letter was received by the defendant insurance company on March 5, 1958. It bore cancellation date of March 3, 1958, at 12:30 p. m.

The defendant insurance company claims it did not receive the application for insurance before the occurrence of the fire. It argues that the defendant Paul Boyle did not write the letter referred to above until after the occurrence of the fire in the early morning of March 3, that he then wrote the letter and posted it which accounts for the cancellation stamp contained on the envelope.

Evidence was adduced that the plaintiff on two previous occasions had purchased fire insurance from the defendant Boyle, both of which policies were written by the defendant insurance company. It is also established the plaintiff had not at any time paid any premium for the insurance in question but that he made inquiry and was advised by the defendant Paul Boyle that he would be billed for it. The evidence is conclusive that the defendant insurance company did not issue or execute an insurance policy on the application in evidence.

The defendant Paul Boyle testified that during the period in question, he was extremely busy making income tax returns for people which was a business he carried on as a sideline to his insurance and real estate business. This was given as the reason why he had not been more diligent in following up the application for builder's risk insurance made on December 16, 1957.

The defendant insurance company admits the defendant Boyle was its agent during the time in question. The agency agreement specifically provides the agent has the power to bind insurance. There is no claim that this was not an acceptable risk.

The defendant Boyle, in doing whatever he did to assist and aid in the instant insurance transaction, to all intents and purposes was the agent of the defendant insurance company. Section 26-07-02, N.D. C.C. The agency agreement in evidence provides for compensation to defendant Boyle on a percentage of the premium. As such agent, he was merely an arm of the

principal, which is the defendant insurance company, and the obligation resting on the defendant Boyle in fact became the obligation of the principal. Stearns v. Merchants' Life & Casualty Co., 38 N.D. 524, 165 N.W. 568, and Ulledalen v. United States Fire Insurance Co., 74 N.D. 589, 23 N.W.2d 856.

■ A preliminary oral contract for temporary insurance pending issuance of a written policy is valid in North Dakota. Such preliminary oral contract remains in force until it is superseded by the issuance of a regular policy, or until the risk is rejected by the insurer, and the insurer is liable for any loss in the meanwhile. Ulledalen v. United States Fire Insurance Co., supra.

■ We have reviewed the record with care and find that the defendant Boyle, as agent for the defendant insurance company, bound the insurance described.

The defendant insurance company raises as its second point the nonpayment of the premium. Assuming, for the purpose of argument, that the defendant Paul Boyle did make and accept oral contracts of insurance in the form of a binder, then the plaintiff became a member of the defendant insurance company, which is a domestic mutual insurance company, on December 16, 1957. This required him to take notice of the law under which the company was organized and authorized to do business. Section 26–1413, N.D.R.C. of 1943, provides:

> "Nonpayment of Premiums and Contingent Liabilities: Effect; Continuation of Liability on Mortgage Clause Policy. If the premium on a policy issued by a mutual insurance company is not paid in cash or in an unconditional note or notes within sixty days after the date of issue of the policy, the policy shall become void and shall remain void during the period of nonpayment of premium. Upon the payment of the premium thereon, the policy shall reattach if no loss has occurred thereunder while the policy was void. If, however, the company has issued a policy and attached thereto a mortgage clause making loss, if any, payable to the mortgagee to the extent of his interest and not exceeding the amount of the policy, the company, notwithstanding the nonpayment of premiums or liabilities, shall be liable on the policy to such mortgagee until the secretary of the company shall have notified the mortgagee in writing that premiums and contingent mutual liabilities have not been paid thereon and the mortgagee shall have had twenty days from the date of such notice in which to pay the same, and in default of such payment, the liability of the company to the mortgagee shall cease."

More than 60 days expired between December 16, 1957, when such binder became effective, and March 3, 1958, when the loss occurred. The premium had not been paid in cash or in an unconditional note or notes as required by the statute. For these reasons, defendant insurance company argues that the insurance coverage, if any, became void 60 days after the 16th day of December, 1957, or about February 14, 1958, as a matter of law. In support of this principle, appellant cites Bach v. North Dakota Mutual Fire Insurance Co., 56 N.D. 319, 217 N.W. 273. At the time of that decision, the statute made no provision for a notice to the mortgagee where the policy had attached thereto a mortgage clause. This court held that insofar as the mortgagee is concerned, he was in no better standing than the mortgagor when the mortgagor failed to pay the premium in compliance with the statute and said "a member of a mutual insurance company cannot contract with the company in such a manner as to vest in third parties rights against the company that such member himself is precluded under the statute from acquiring or enjoying." It held that the provision of the statute rendering a policy void was applicable to a mortgagee as well as to an owner and that every person insured by a domestic mutual insurance company, other than life, is a member of the company while the policy is in force, and

the policy, so far as its validity is concerned, is subject to the statutory provisions governing the relations between the company and its members.

The defendant insurance company also cites Godfrey v. North Dakota Farmers' Mutual Tornado & Cyclone Co., 63 N.D. 418, 248 N.W. 527, in support of its argument. That case is not applicable because it involved the actions of a soliciting agent whose authority was restricted to soliciting and who had no authority to bind the company to a contract of insurance. It held that the company was not bound by the words or acts of approval of an application by such soliciting agent, that they were his own and not those of the company.

The plaintiff objects to our consideration of the issue for the reason that it constitutes an affirmative defense and under Rule 8(c) of the N.D.R.Civ.P., it must have been affirmatively pleaded. Since it was not affirmatively pleaded, it was waived according to Rule 12(h), N.D.R.Civ.P., which provides:

"A party waives all defenses and objections which he does not present either by motion * * * or * * * in his answer or reply, * * *."

The plaintiff urges he took the same position before the trial court; however, the trial court considered the issue upon its merits. We believe sufficient facts were pleaded in plaintiff's complaint to permit the defendant to raise the issue as a defense of failure to state a claim upon which relief can be granted, which defense is an exception to the rule. The plaintiff pleaded in his complaint that application was made for the insurance on December 16, 1957, and that the defendant Boyle agreed, on behalf of the defendant insurance company, to immediately insure and to "bill plaintiff for the premium." He also alleges that the loss occurred on March 3, 1958. The payment of the premium in cash or by unconditional note or notes within 60 days after December 16, 1957, is not pleaded by the complaint. Thus we feel the issue could have been raised either by pleading it affirmatively or urging the defense of failure to state a claim upon which relief can be granted. For this reason, and the further fact that the court did consider the defense on its merits, we will consider it herein.

The district court in its memorandum found that prepayment of the premium was not a condition precedent to the consummation of the contract and assumption of the risk by the insurer as the insured's obligation to pay is a good consideration and cites in support thereof Ulledalen v. United States Fire Insurance Co., supra. It also found that in the instant action, the plaintiff relied upon the defendant Boyle's promise and thereby plaintiff did not procure insurance elsewhere and this likewise was a good consideration for the contract. Western National Insurance Co. v. LeClare, 9 Cir., 163 F.2d 337. It found that the cases of Bach v. North Dakota Mutual Insurance Co., supra, and Godfrey v. North Dakota Farmers' Tornado & Cyclone Co., supra, were not applicable because in each of those cases the policy of insurance had been issued, whereas in this case we are dealing with a binder. The court in its memorandum opinion stated:

"To give such construction and interpretation to Section 26–14–14 NDCC as argued by the counsel of the defendant insurer would make pertinent the delay of the insured in paying the premium, whereas the critical inquiry in this case is the delay or omission of the defendant insurer and its 'arm', the defendant agent, to act in accord with good business practice conducive to protection of innocent parties through coverage by 'verbally assured' temporary or preliminary insurance contract."

According to the evidence, the plaintiff in this case was a member of the defendant company. At the time of the transaction with the defendant Boyle, the

plaintiff had purchased two insurance policies from the defendant insurance company through its agent, the defendant Boyle. For this reason, plaintiff was already a member and was necessarily charged with notice and knowledge of the statutes governing this type of insurance coverage. The defendant insurance company's agent, the defendant Boyle, could not waive the statutory provisions as against other members and enter into a valid agreement waiving the provisions of the statute. However, it appears from the evidence that plaintiff in January or early February, 1958, had made inquiry about payment of the premium when the following conversation took place:

"Q. O.K. What was said between you and Paul Boyles at that time and place?

"A. Well, we—I had fellow that was helping haul gravel, sat down with Paul, happened to be sitting in *restaurant* there, and we were talking together, don't know what we were talking about, but know I asked him if he knew how much I owed him for insurance, why he hadn't billed me, something to that effect.

"Q. What did he say?

"A. As I recall he said that he was busy with income tax and he did not have time, or had not had time and he would bill me later, I believe that was all that was said about insurance."

The defendant Boyle testified as follows:

"Q. Did Mr. Reishus pay you for the premium for the fire insurance policy on December 16th?

"A. No, sir, he did not.

"Q. What agreement was made with Mr. Reishus in connection with the premium?

"A. Well I always—the agreement I have always had with Mr. Reishus is when deliver policy I collect his premium.

"Q. In other words, you agreed to bill him for premium at later date, is that correct?

"A. That's right."

■■ Accepting this version, and it is not disputed in the evidence, the plaintiff would have paid the premium, had he been permitted to do so. The plaintiff was not billed for the premium nor was a policy of insurance delivered to him. He had been assured in several contacts with the defendant Boyle, agent of the defendant insurance company, that he had coverage, that the policy would be delivered to him later, and that he would be billed for the premium. It appears he relied implicitly upon the statements and representations of the defendant Boyle. There is no reason suggested in the record that the policy would not have been issued in due course had it not been for negligence on the part of the defendant insurance company or its agent, the defendant Boyle. It is not necessary to determine where the responsibility for this negligence lies in this case as the right of action for its breach is against the principal and not the agent. Vol. 12, Appleman, Insurance Law & Practice, Sec. 7197. A parol agreement to insure, entered into by an agent having authority to bind the insurance, is the agreement of the principal and not the agent. Boos v. Aetna Insurance Co., 22 N.D. 11, 132 N.W. 222, Ulledalen v. United States Fire Insurance Co., supra.

■ The question of whether the loss occasioned must be borne by the plaintiff only, or whether it shall be borne by the defendant insurance company, must be resolved in favor of the plaintiff. This theory has support in Telford v. Bingham County Farmers' Mutual Insurance Company, 52 Idaho 461, 16 P.2d 983.

It is next argued the plaintiff had no insurable interest and therefore the contract, if one is found to exist, is void. Section 26–02–04, N.D.C.C., provides:

"The sole object of insurance is the indemnity of the insured, and if the in-

sured has no insurable interest, the contract is void."

Section 26–02–06, N.D.C.C., defines an insurable interest as follows:

"Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might damnify directly the insured is an insurable interest, and may consist in:

"1. An existing interest;

"2. An inchoate interest founded on an existing interest; or

"3. An expectancy coupled with an existing interest in that out of which the expectancy arises."

A careful reading of this statute discloses that any relation to property of such a nature that a contemplated peril might damnify directly the insured is an insurable interest.

■ The plaintiff had no legal nor equitable interest in the building upon which he was working. The building was owned by the City of Mohall. The plaintiff, however, had a contract with the City of Mohall to remodel this building and was in the process of doing the work when the fire occurred. The burning of the building placed it beyond his power to comply with his contract and thus it disabled him to earn the agreed compensation. Such an interest was held to be an insurable interest in Planters' & Merchants' Insurance Co. v. Thurston, 93 Ala. 255, 9 So. 268.

■ In the early history of insurance, there was a tendency to require title and ownership as a basis of insurable interest. The later decisions have adopted a more liberal doctrine and under the majority of the holdings, it is not now essential to an insurable interest that one should have a property in a thing insured or an estate legal or equitable. The term "insurable interest" is generally held by the courts to be more extensive than property or estate.

This reasoning is in agreement with our statute which provides that any relation to property of such a nature that a contemplated peril (fire) might damnify directly the insured (loss of labor, material and/or profit) is an insurable interest. Thus any reasonable expectation of legitimate profit or advantage to derive from property as a result of the insured's relation thereto, is an insurable interest under the definition of our statute. We believe a person has an "insurable interest" in property by existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property. Such a holding has much support in case law. Cherokee Foundries v. Imperial Assurance Co., 188 Tenn. 349, 219 S.W.2d 203; North British & Mercantile Insurance Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764, 27 A.L.R.2d 1047; Crabb v. Calvert Fire Insurance Co., (Ky.), 255 S.W.2d 990; Nathan v. Saint Paul Mutual Insurance Co., 243 Minn. 430, 68 N.W.2d 385; Banner Laundry Co. v. Great Eastern Casualty Co., 148 Minn. 29, 180 N.W. 997; American Indemnity Co. v. Southern Missionary College, 195 Tenn. 513, 260 S.W.2d 269, 39 A.L.R.2d 714; Commercial Standard Insurance Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775; National Farmers Property & Casualty Co. v. Thompson, 4 Utah 2d 7, 286 P.2d 249, 61 A.L.R.2d 635; Shaffer v. Calvert Fire Insurance Co., 135 W.Va. 153, 62 S.E.2d 699; Weaver v. Hartford Fire Insurance Co., 168 Kan. 80, 211 P.2d 113; Goodman v. Quaker City Fire & Marine Insurance Co. (D.C.Mass.), 141 F.Supp. 61; American Central Insurance Company v. Kirby (Mo.App.), 294 S.W.2d 556; Feinman v. Consolidated Mutual Insurance Co., Mun.Ct., 155 N.Y.S.2d 326; Oklahoma State Union of Farmers' Educational & Co-op. Union of America v. Folsom (Okl.), 325 P.2d 1053; Lititz Mutual Insurance Co. v. Lengacher (7 Cir., Ind.), 248 F.2d 850; Bernhardt v. Boeuf & Berger Mutual Insurance Co. (Mo.App.), 319 S.W.2d 672; Rogers v. Lumbermans Mutual Casualty

Co., 271 Ala. 348, 124 So.2d 70; See 29 Am.Jur., Insurance, Sec. 438; 44 C.J.S. Insurance § 175(b) and § 180.

It appears generally established that contractors, builders and the like, independent of any statutory lien, have insurable interests in the building for the construction of which they furnish labor, skill or material, at least where they are to receive payment in installments or only on completion of the work. See 44 C.J.S. Insurance § 186, and 29 Am.Jur., Insurance, § 441.

Earlier in this opinion we made reference to the specifications of the contract wherein it is provided that the owner (City of Mohall) shall effect and maintain fire insurance upon the entire structure (the old and the new) to 100% of the insurable value thereof. It is specifically provided the insurance shall not cover any tools or equipment owned or rented by the contractor which is not included in the cost of the work. They also provide that such insurance shall designate the contractor and all subcontractors, as well as the owner, as insureds, and a loss, if any, is made adjustable with and payable to the owner, as trustee for the insureds as their interest may appear. The specifications then provide:

"If the Owner fails to effect or maintain insurance as above and so notifies the Contractor, the Contractor may insure his own interest and that of the subcontractors and charge the cost thereof to the Owner."

According to the record, the owner, the City of Mohall, carried insurance in the Fire and Tornado Fund of the State in the amount of $15,000.00. This policy was in effect before this contract was entered into. It was not changed or increased as a result of the work. It is clear the owner did not carry insurance upon the entire structure in the amount of 100%' of its insurable value and, although the testimony was introduced for another purpose, it is clear from this testimony that the plaintiff contractor had knowledge that the City of Mohall, as owner, was not about to increase the insurance coverage. In view of the provisions of the contract and the fact that the plaintiff had notice that the owner, City of Mohall, did not intend to effect or maintain insurance as called for by the contract, plaintiff had an insurable interest. Plaintiff had a right to effect and maintain insurance to cover his own interest and that of the subcontractors and to charge the cost thereof to the City of Mohall. In view of the circumstances, it clearly appears plaintiff had an insurable interest in the property.

The defendant insurance company also argues that because the owner of the building is the City of Mohall, a political subdivision, as defined in Section 26–24–01, N.D. C.C., the building is a public building insurable only in the State Fire and Tornado Fund and cites in support thereof Section 26–24–04, N.D.C.C., which is as follows:

"Public buildings insurable only in fund.—The public buildings and fixtures and permanent contents therein belonging to the state, the various state industries, and the political subdivisions of the state, shall be insured under the provisions of this chapter. No officer or agent of the state or of any political subdivision thereof, and no person having charge of any public buildings belonging to the state, any state industry, or any political subdivision of the state, shall pay out any public moneys or funds on account of any insurance against loss by fire, lightning, inherent explosion, windstorm, cyclone, tornado and hail, explosion, riot attending a strike, aircraft, smoke, and vehicles, or contract in any manner for, or incur any indebtedness against, the state or any political subdivision thereof on account of any such insurance upon any of the buildings or fixtures and permanent contents therein belonging to the state or any political subdivision thereof, except in the manner provided in this chapter."

The plaintiff cites Section 48–01–03, N.D. C.C., and argues it governs. This section reads as follows:

"Insurance.—The board or commission having the contract performed shall cause to be insured in some solvent company, against loss or damage by fire or tornado, all unfinished buildings, erections, improvements, and material upon the ground, in an amount sufficient to protect the board or commission and the contractor. All premiums for such insurance shall be paid by the board or commission."

These statutory provisions at first glance may appear to be in conflict. A careful reading however discloses they refer to different subject matters.

Title 26, N.D.C.C., deals with the State Fire and Tornado Fund, a state insurance system. Section 26–24–04 provides that public buildings shall be insured in the fund. A city-owned building is a public building, Section 26–24–01(3).

Title 48, N.D.C.C., deals with public buildings. Chapter 48–01 provides for contractor's bonds and insurance for the erection, repair or alteration of any public building and Section 48–01–03 provides for the insurance to be carried. It is specifically tailored for builder's risk insurance not found in the State Fire and Tornado Fund statutes.

■ We think it clear that fire insurance on a city-owned community hall in the process of being altered by remodeling into a fire hall under a private contract may be insured in a private solvent company in an amount sufficient to protect the contractor.

■ Lastly, the defendant insurance company argues that if there is insurance coverage by oral binder, there is still no coverage of the equipment, machinery and tools because the application submitted by their agent, the defendant Boyle, provides for 90% coinsurance; that the amount of

insurance requested by the application, $17,-942.00, is not 90% of the value of the entire building and, therefore, Section 2 of the standard builder's risk form is operative to exclude coverage of these items. Section 2 of this standard form, as introduced in evidence, provides as follows:

"This policy also covers materials and supplies incident to the construction of said building or structure and when the 80% or higher Coinsurance Clause applies, this policy also covers:

"(a) temporary structure; and

"(b) when not otherwise covered by insurance, builders' machinery, tools and equipment owned by the Insured or similar property of others for which the Insured is legally liable; * * *."

The amount of the contract, as previously stated, was $15,037.50. The plaintiff originally had bid the sum of $17,942.00. This amount exceeded what the City was willing or able to pay for the alterations. Some modifications were made in the plans. The amount was reduced by agreement between the plaintiff and the City of Mohall and a contract was made in the amount of the agreed sum of $15,037.50. The plaintiff's insurable interest in the building could not exceed the amount of the contract which was his maximum insurable interest. The contract provided for progress payments to be made on or about the first day of each month during the period of construction and the plaintiff was required to furnish the labor and materials. Therefore, it would seem that at any stage of the construction his true insurable interest would be less than the amount of the contract. The measure of an insurable interest in property is the extent to which the insured might be damnified by loss or injury thereof. Section 26–02–08, N.D.C.C. The amount of insurance in force exceeded such an amount. It cannot be argued that there was no compliance with an 80% or a 90% coinsurance clause and Section 2 of the builder's risk standard form was operative.

On the basis of the facts and the law, we find there was insurance coverage. Such coverage is in the amount of the plaintiff's insurable interest in the work and on the machinery, tools and equipment owned by the insured or similar property of others for which the plaintiff was legally liable and which was not otherwise covered by insurance. The defendant City of Mohall is obligated for the premium properly chargeable for such insurance; however, the plaintiff did not pray judgment for the amount of the premium nor has the defendant insurance company counterclaimed therefor. Relief cannot be allowed either the plaintiff or the defendant insurance company in this action for the amount of the premium.

The evidence does not establish that the fire was caused by negligence on the part of the plaintiff. Fault was not established on either party. It is the general rule in this country that where one agrees to furnish the labor and materials to do work on an existing building, the property of another, the agreement is upon the implied condition that the building shall remain in existence and that destruction of it without fault of either party excuses performance of the contract by the person performing such work and entitles him to recover the reasonable value of the part performance already effected. 9 Am.Jur., Building & Construction Contracts, Sec. 64; 53 A.L.R. 122; 170 A.L.R. 980.

The plaintiff is entitled to judgment against the defendant insurance company for the reasonable value of the work completed and materials furnished remaining unpaid and stipulated in the amount of $4,-135.73, for the loss of the plaintiff's equipment in the amount of $4,386.07 which was not covered by other insurance, for the loss of similar property of others for which the plaintiff was legally liable in the amount of $2,282.00, or for a total judgment of $10,-803.80. The lower court found the plaintiff was entitled to judgment in the amount of $10,337.73, or $466.07 less, but in its memorandum or findings it made no explanation.

We cannot speculate thereon. For these reasons, we order that the judgment be modified to provide damages in the amount of $10,803.80 and as modified it is affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.